IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DICKEY'S BARBECUE RESTAURANTS, INC. § <br> Plaintiff, § <br> § <br> vs. § <br> § <br> LIRA, LLC and LUIGI MANGIONE § <br> § <br> Defendants. § | CIVIL ACTION No. 3-10CV-300-P |

BRIEF IN SUPPORT OF PLAINTIFF'S APPLICATION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff Dickey's Barbecue Restaurants, Inc. ("Plaintiff") and files this its Brief in Support of Plaintiff's Application for Temporary Restraining Order and Preliminary Injunction as follows:

I. Legal Standard

A. Temporary Restraining Order and Preliminary Injunction

In order "[t]o obtain the extraordinary relief of a temporary restraining order or preliminary injunction, Plaintiff must establish that (1) there is a substantial likelihood that it will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the Defendant; (4) a preliminary injunction or temporary restraining order will not disserve the public interest." Pizza Hut, Inc. v. White, 2002 U.S. Dist. LEXIS 19930 at *5 (N.D. Tex.

October 18, 2002) (Lindsay, J.) citing Canal Authority of the State of Florida, 489 F.2d 567 (5th Circ. 1974) (en banc).   See also TGI Friday's, Inc. v. Great Northwest, 2009 U.S. Dist. LEXIS 73768 at *6 (N.D. Tex. August 20, 2009), (Fitzwater, J).  The Supreme Court has noted that "the purpose of a preliminary injunction is merely to preserve the relative positions of the party until a trial on the merits can be held." Univ. of Tex. v. Camenisch, 451 U.S. 390, 395, 101 S.Ct. 1830 (1981).

B. Lanham Act – 15 USC §1051 et. seq.

"To recover on a claim of trademark infringement, a plaintiff must first show that the mark is legally protectable and must then establish infringement by showing a likelihood of confusion." American Rice, Inc. v. Producers Rice Mill, Inc. 519 F.3d 321, 329 (5th Cir. 2008).

"To be protectable, a mark must be distinctive, either inherently or by achieving secondary meaning in the minds of the public." Ibid. "The Lanham Act provides a cause of action for infringement where one uses (1) any reproduction, counterfeit, copy, or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution or advertising of any goods; (5) where such use is likely to cause confusion or to cause mistake or to deceive" Id. (internal quotations omitted).

"The factors used by this Circuit in determining whether a likelihood of confusion exists are (1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (6) actual confusion; and (8) degrees of care exercised by potential purchasers." Id. "The absence or presence of any one factor ordinarily is not dispositive; indeed a finding of a likelihood of confusion need not be supported by a majority of

the factors." Id. The 5th Circuit has "determined that to prevail on a post-termination trademark infringement claim, the registrant of the trademark [Plaintiff] had to show that (1) its mark was used in commerce by the defendant without its consent and (2) the unauthorized use is likely to cause confusion, or to cause mistake or to deceive." Pizza Hut, at *7-8 citing Professional Golfers Ass'n. of America v. Bankers Life & Cas. Co., 514 .2d 665, 670 (5th Cir. 1975).

II. Analysis of Elements

    A. Substantial Likelihood of Success on the Merits

The Court need only consider whether one of Plaintiff's causes of action, the action for trademark infringement under 15 U.S.C. § 1114(a), has substantial likelihood of success in order to grant the temporary restraining order and preliminary injunction. Pizza Hut, at *6.

    1. Use of Mark in Commerce Without Consent

The evidence establishes that Plaintiff rightfully terminated the Franchise Agreement based upon Defendant Lira's failure to pay applicable royalty fees and contributions to the marketing fund, as well as failure to be open for business on a required date, failure to account for offsite sales, failure to disclose all sales records, failure to allow an inspection and failure to allow for review of accounting records. The evidence further establishes that Plaintiff notified Defendant of this default, that such fees and contributions were due and owing at the time of both the default and the termination and that Defendant is presently in arrears in the approximate amount of $51,050.96 as of February 9, 2010. See e.g. Pizza Hut, at *8-9. Defendant Lira was notified of its termination and has violated its post termination obligations under the termination letter and the Franchise Agreement. In particular, Defendant Lira has continued to use the

Trademarks, Proprietary Marks and Trade Secrets of the Dickey's System[1] even after termination. The Franchise Agreement gives Defendant Lira the right to use Plaintiff's marks while the agreement is in effect; however Article 17 B. of the Franchise Agreement expressly states that upon termination of the agreement, the franchisee must immediately and permanently cease to use the Trademarks, Proprietary Marks and Trade Secrets of the Dickey's System. See e.g. TGI Friday's at *8-9. Any continued use of the Trademarks, Proprietary Marks and Trade Secrets of the Dickey's System after termination are unauthorized. 7-Eleven, Inc. v. Puerto Rico-7, Inc., 2009 U.S. Dist. LEXIS 115064 at *27 (N.D. Tex. Dec. 9, 2009) (Boyle, J.). Defendant Lira "is an ex-licensee and the law is clear that termination of a trademark license precludes further use by the licensee." Id. quoting Ramada Franchise Sys. Co. v. Jacobcourt, Inc. 2001 U.S.. Dist. LEXIS 6650 at *7 ( N.D.Tex. May 17, 2001) (Fitzwater, J.). Failure to pay past due fees related to a franchise is grounds for termination under the Franchise Agreement which includes a revocation of their authorization to use the Trademarks, Proprietary Marks and Trade Secrets of the Dickey's System. Dunkin Donuts Franchised Restaurants, L.L.C. v. Shrijee Investments, Inc. 2008 U.S. Dist. LEXIS 107353 (E.D. Mich. December 23, 2008) (Murphy, J.). Based upon the foregoing, it is clear that Defendant Lira's continued use of the Trademarks, Proprietary Marks and Trade Secrets of the Dickey's System is unauthorized and without consent. Plaintiff's likelihood of success on the merits on this issue is very substantial since "once a license is terminated, the ex-licensee has no authority to continue to use the licensor's

---

[1] Plaintiff incorporates by reference the definitions of such terms contained in Plaintiff's Complaint.

mark and must be enjoined from further use of it". KFC Corporation v. Goldey, 714 F. Supp. 264, 267 (W.D. Kent. 1989).

2. Unauthorized Use Likely to Cause Confusion, or to Cause Mistake or to Deceive

The 5th Circuit "has held that the continued use of a trademark by one whose license has been cancelled satisfies the likelihood of confusion test and constitutes trademark infringement." 7-Eleven, at *28. "Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks." Pizza Hut *9 citing Burger King Corp. v. Mason, 710 F.2d 1480, 1491-92 (11th Cir. 1983). Since the Plaintiff has established that Defendant Lira is using Plaintiff's exact marks, not merely similar marks, the district court "need not analyze all 'digits of confusion'" considered as factors used in determining whether a likelihood of confusion exists. TGI Friday's at *8 See also Ramada at *8 ("continued use of an identical trademark by franchisee following termination of a franchise agreement constituted *ipso facto* evidence of a likelihood of confusion for purposes of establishing trademark infringement"). Courts have "concluded that likelihood of confusion is particularly great with respect to fast food restaurants which are the subject of impulse buying". KFC Corp. at *8 citing Frisch's Restaurants, Inc. v. Elby's Big Boy, 670 F.2d 642 (6th Cir. 1982) cert. den. 459 U.S. 916, 103 S.Ct. 231 (1982). Accordingly, Plaintiff has shown, under both applicable elements, that there is a substantial likelihood of success on the merits of its claim for trademark infringement. Pizza Hut, at *9.

B. Threat of Immediate and Irreparable Harm

Plaintiff has "established a substantial threat that it will suffer irreparable injury if the injunction is not granted." Pizza Hut, at *10. "In a trademark infringement case, a substantial

likelihood of confusion constitutes irreparable injury." Ramada Franchise at *8. See also KFC Corp., at *7-8. If Defendant Lira is not enjoined from representing itself as a Dickey's franchisee, Plaintiff "is likely to suffer harm through the loss of control over its own good will and reputation." Pizza Hut, at *10. Since Plaintiff "has terminated the Franchise Agreement it is in no position to exercise control over the goods marketed" by Defendant Lira. Id. Further, a former franchise "would have little incentive to promote the value of the franchise as a whole, and his unregulated conduct under the franchisor's trademark and systems could dilute the value of the marks, as well as significantly impact the customer good will associated with [Plaintiff's] reputation. Pizza Hut, at *11. "[W]hen a plaintiff incurs substantial financial expenses in protecting and promoting its trademarks, irreparable harm arises where the defendant is using its resources in such a way as to confuse the public as to believe it is dealing with the plaintiff." KFC Corp. at *8. Since Defendant Lira continues to use Plaintiff's marks and holds its restaurant out as a licensed Dickey's location, it is inevitable that customers will be confused into believing that they are dining at a Dickey's restaurant. TGI Friday's at *17. The majority of Circuits, including the 5th Circuit, have "held that a court may presume irreparable injury upon finding a likelihood of confusion in a trademark case." Ibid. at *18 citing cases. "In these cases... the harm stems not from the actual quality of the goods (which is largely irrelevant) but rather from the [franchisor's] loss of control over the quality of goods that bear its marks." Dunkin Donuts at *25. "A bad experience in what is supposed to be a relatively uniform chain may influence the customer to view the entire franchise poorly". 7-Eleven at *30. "Thus a court need only find that a defendant is liable for infringement or unfair competition for it to award injunctive relief." Dunkin Donuts at *25.

Upon a finding that Plaintiff is likely to prevail on the merits of its infringement claim, the Court also should conclude that it is likely that there is a threat of immediate and irreparable harm if a preliminary injunction does not issue. Dunkin Donuts at *25.

C. Balancing of Hardships

The evidence and the caselaw clearly establish that the threat of immediate and irreparable harm to Plaintiff, as franchisor, easily outweighs the threatened harm to Defendants. TGI Friday's, at *22. As discussed in the preceding section, Plaintiff loses control of its marks, faces a substantial threat to its reputation, suffers damage to its good will built though its brand, and stands to lose significant value if it cannot enjoin terminated franchisees. Ibid at *22. "Although Defendants will suffer some amount of harm if an injunction is issued, courts usually hold that when defendants improperly use a plaintiff's trademark, the threatened harm to the plaintiff outweighs the threatened harm to the defendants." 7-Eleven at *30-31; Pizza Hut at *11-12. "Simply put, a terminated franchisee has no right to continue to hold itself out as an authorized franchisee, and enjoy its benefits. TGI Friday's at *24 citing Burger King, 766 F.Supp. at 1157. Further, the possibility of defaults and termination is inherent in any franchising system from which Defendants benefitted from in this case. Dunkin Donuts, at *26. "Rather than hanging out their own shingles and attempting to build goodwill, expertise and local product recognition from scratch, [Defendants] agreed to pay franchise and advertising fees to [Plaintiff] in exchange for access to its goodwill, business methods and product line. Ibid. The balance of hardships in this case entirely favors Plaintiff, since [t]o hold otherwise would be to deprive [Plaintiff] of the benefit of its system and eliminate any incentive for it to operate the system at all. Ibid at *27.

D. Public Interest

The evidence and caselaw on the public interest factor weighs heavily in favor of Plaintiff. Pizza Hut at *12. Since "society thrives on a capital based economy that rewards success through the competition, the public interest promotes the protection of valuable trademarks." Ibid at *12." The public interest is always served by requiring compliance with congressional statutes, such as the Lanham Act and by enjoining the use of infringing marks." TGI Friday's at *25 citing Quantum Fitness Corp. v. Quantum Lifestyle Ctrs., L.L.C. 83 F.Supp. 2d 810, 831 (S.D. Tex. 1999). See also 7-Eleven at *31 ("[b]ecause an injunction would ensure compliance with both state and federal laws, as well as the parties' own agreement, it would not have an adverse effect on the public interest."). "The public also has an interest in not being deceived into believing that it is dining at a [Dickey's] that is no longer affiliated with [Dickey's]." TGI Friday's at *25. Accordingly, the public interest will not be disserved by a temporary restraining order or temporary injunction prohibiting the Defendants' from continuing to use the Trademarks, Proprietary Marks and Trade Secrets of the Dickey's System.

III. Appropriate Bond or Other Security

Finally FRCP 65(c) provides that "the Court, may issue a preliminary injunction or temporary restraining order only if the movant gives security in an amount that the Court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The courts in these types of trademark infringement cases have been consistent in refusing to require a large bond in support of a temporary restraining order or a temporary injunction. A review of the caselaw in the trademark infringement area has revealed cases in which courts have approved a bond in a range from $0 to approximately

$10,000 or $12,000 per franchise location. See Dunkin Donuts at *28-29 (court did not require any bond because the court concluded "the strength of Dunkin's likelihood of success on the merits obviates any need for a bond). See also TGI Friday's at *27-28 (because the plaintiff's likelihood of success on the merits was strong, a "relatively low bond" of $100,000 in a case involving 10 franchise locations was appropriate); See Bad Ass Coffee Co. of Hawaii, 636 F. Supp.2d 1237,1252 (D.C. Utah 2009) (requiring $10,000 security bond in a case involving a coffee house franchise); See Petro Franchise Systems, L.L.C. v. TA Operating, L.L.C., 607 F. Supp. 2d 781, 801-802 (W.D. Tex. 2009) (requiring only $25,000 security bond in a case involving 2 franchise locations of large truck/auto travel centers comprised of fueling, merchandising, restaurant and preventative maintenance operations). Plaintiff is willing to post a bond or security in the amount the Court deems appropriate under F.R.C.P. 65(c).

Respectfully submitted,

WESNER COKE & CLYMER, P.C.

By: /s/ Stephen A. Coke
Stephen A. Coke
Texas State Bar No. 04519000
Richard W. Winn
Texas State Bar No. 21779700
Three Galleria Tower - Suite 800
13155 Noel Road
Dallas, Texas 75240
Telephone: (972) 770-2600
Fax: (972) 770-2601
E-Mail: scoke@wccpc.com
ATTORNEYS FOR PLAINTIFF
DICKEY'S BARBECUE RESTAURANTS, INC.