IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DICKEY'S BARBECUE RESTAURANTS, INC., | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | 3:10-CV-300-P |
| | § | |
| LIRA, LLC and LUIGI MANGIONE, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Now before the Court is Plaintiff Dickey's Barbecue Restaurants, Inc.'s ("Plaintiff" or "Dickey's") Original Complaint and Application for a Temporary Restraining Order ("TRO Application") and Application for a Preliminary Injunction filed on February 16, 2010.[1] Defendants Lira, LLC ("Lira") and Luigi Mangione ("Mangione") (collectively "Defendants") did not respond. After reviewing Plaintiff's briefing, the evidence, and the applicable law, the Court GRANTS Plaintiff's TRO Application.

### I.  **Background**

There is sufficient evidence to support Plaintiff's allegations that:

1. Dickey's Barbecue Pit ("Dickey's") is fast-food style restaurant that serves "freshly-prepared barbecue meats and other food products." (Pl.'s Compl. ¶ 9.) The time, skill, effort, and money that Plaintiff has put in to developing Dickey's has given it the right to control the use of the Dickey's name, as well as all trademarks, proprietary marks, and trade secrets associated with Dickey's.

---

[1] On the same date, a summons was issued to Defendants. Though the summons has not yet been returned executed, Plaintiff has represented to the Court that copies of the TRO Application were sent via FedEx to Defendants and Mr. Blair Clark, an attorney in Boise, Idaho, known to have represented Defendants in the past. Additionally, the Court made several informal attempts to contact Mr. Clark in effort to allow Defendants to expeditiously submit a response to Plaintiff's TRO Application. Mr. Clark never personally returned the Court's phone calls. But the immediacy of the need to speak with him was conveyed to his voicemail and his firm's office manager. To this date, the Court still has not been contacted by Defendants or Mr. Clark.

2. Additionally, Plaintiff has registered and continuously used the names and marks "Dickey's" and "Dickey's Barbecue Pit" and "Since 1941 Dickey's Barbecue Pit." (Pl.'s Compl. Ex. B-D.)

3. Plaintiff entered into a Franchise Agreement with Lira's predecessor in interest Lira, Inc. on or about March 20, 2006, which allowed Lira, Inc. to operate a Dickey's Barbecue Pit at 2441 N. Snow Goose Way, Meridian, Idaho, 83646 ("Franchisee"). (Pl.'s Compl. ¶ 12.)

4. On March 1, 2007, Plaintiff and Lira executed an assumption of rights agreement which gave transferred to Lira any and all of Lira, Inc.'s rights and obligations under the agreement. Mangione guaranteed the covenants, representations and warranties of the Franchisee and acknowledged and accepted the undertakings of the principals in the Agreement.

5. Pursuant to the Franchise Agreement Defendants are required to pay royalty and advertising fees on or before the tenth day of each calendar month.  (Franchise Agreement 6-7.)[2]  Defendants did not pay the royalty or advertising fees due on October 10, 2009 or any month thereafter.  As of February 9, 2010, the total amount of royalty fees owed by Defendants was $16,203.93.  (Pl.'s Compl. Ex. A.)

6. Defendant also violated the Franchise Agreement by failing to account for off-site sales and remain open on a required date (November 27, 2010- Black Friday) (Pl.'s Compl. ¶ 17.)

7. On January 19, 2010, Dickey's gave notice to Defendants that the Franchise Agreement was terminated due to Defendants' breach of its terms. (*Id*. ¶ 18.)  When Dickey's informed Defendants that the franchise agreement had been terminated, notice was also given to immediately cease and desist operation of the Dickey's Restaurant operated in Merdian, Idaho.  (*Id*.)  Additionally, Defendant was instructed to cease use of all signs, symbols, and other things associated with Dickey's including making the outside premises void of anything that would identify the location as formerly being a Dickey's restaurant. (*Id*.)

8. On January 29, 2010, the Director of Construction for Plaintiff made an on-site inspection and discovered that Defendants had continued to use Plaintiff's trademarks, trade secrets, proprietary marks, and the Dickey's décor.  Examples of this include, but are not limited to the following :

   (a) Defendants had continued operation of a restaurant, but the Restaurant was now named "L.L. Barbecue Pit;"

---

[2] The Franchise Agreement is attached to the affidavit of Michelle Frazier.  Pursuant to LR 79.3, both of these documents have been filed under seal.

(b) The electric exterior sign over the main entrance had been modified by removing the part of the sign that said "Dickey's" and replacing it with "LL," the part of the sign that said "Barbecue Pit" remained unchanged;

(c) Near the location that customers place their orders were two large Dickey's menu boards which clearly read "Dickey's Plates" and "Dickey's Classics;"

(d) Defendants were still using yellow plastic cups with "Since 1941 Dickey's Barbecue Pit" printed on the outside – these cups are referred to on the Dickey's menu as the "Big Yellow Cup;"

(e) The receipts given to customers read "Dickey's BBQ;"

(f) There was a photograph of Mr. Dickey, President Reagan and Dickey's employees hanging on the wall;

(g) Continued serving food utilizing secret recipes;

(Pl.'s App. Aff. and Attached Exs.)

9. As of the date of this Order, there has been no indication that Defendant has ceased the use of Plaintiff's trademarks, proprietary marks, and trade secrets in the manner described above.

10. Since Plaintiff filed this TRO Application, Defendants have been given written and oral notice of the complaint and pending TRO Application.

## II.  Legal Analysis & Discussion

To obtain a temporary restraining order, the moving party must demonstrate to the Court that: (1) there is a substantial likelihood of success on the merits; (2) there is a substantial threat of irreparable injury to the plaintiff if the injunction is not granted; (3) the threatened outweighs any injury the injunction may cause to the defendant; and (4) granting the injunction will not disserve the public interest.  *See Sugar Busters, LLC v. Brennan*, 177 F.3d 258, 265 (5th Cir. 1999).  If the moving party cannot prove all four of these elements, a court must deny the injunctive relief since "[t]he decision to grant a preliminary injunction is to be treated as the

exception rather than the rule." *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

### 1.    Likelihood of Success on the Merits

When determining the likelihood of success on the merits, a court looks to the standards of the substantive law.  *See Roho, Inc. V. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990).  To obtain an injunction, the likelihood of success must be more than negligible.  *See Compact Van Equip. Co. v. Leggett & Platt, Inc.*, 566 F.2d 952, 954 (5th Cir. 1978).

Plaintiff seeks injunctive relief on trademark infringement grounds.  There is strong evidence that Plaintiff has ownership over the trademarks, proprietary marks, and trade secrets that distinguish Dickey's from other restaurant chains.  Though the Franchise Agreement gave Defendants a limited right to use these marks, the Franchise Agreement was terminated on January 19, 2010.  Despite the termination of the franchise agreement Defendants continue to use the trademarks, proprietary marks, and trade secrets of the Dickey's system without authorization or consent, all in violation of 15 U.S.C. § 1114(a).  Accordingly, Plaintiff has shown a substantially likelihood of succeeding on its claim against Defendants for trademark infringement.

### 2.    Irreparable Injury

An irreparable injury is one that can not be remedied by monetary damages following trial.  *Deerfield Med. Ctr. v. Deerfield Beach*, 661, F.2d 328, 338 (5th Cir. 1981).  Establishing a strong likelihood of confusion in the consumer's mind "almost inevitably establishes irreparable harm."  *Church of Scientology Int'l v. Elmira Mission of Church of Scientology*, 794 F.2d 38, 42 (2d Cir. 1985); *see also Lennar Pac. Props. Mgmt. v. Dauben, Inc.*, No. 3:07-CV-1411-G (N.D.

Tex. Aug. 6, 2007) ("[T]rademark infringement is, as a matter of law, an irreparable injury.").

Plaintiff's

There is strong evidence that Defendants use of the trademarks, proprietary marks, and trade secrets of the Dickey's system has a strong likelihood of leading customers to believe that the service and food provided at Defendants' restaurant is representative of Dickey's.  The evidence establishes the danger of confusion and loss of Plaintiff's good will as a result of consumer confusion.  In turn, the danger of consumer confusion establishes a significant risk of irreparable injury.

### 3.  Balancing the Risks of Injury

The harm to Plaintiff, discussed above, which would result from not granting the TRO Application outweighs the possible harm to Defendants.  When discussing the possible harm to Defendants it is important to note that the evidence indicates Defendants acknowledgment of the franchise agreement being terminated.  This is evidenced by the fact that Defendants appear to have already attempted to transition to a restaurant that is named "LL Barbecue Pit."  Defendants apparent  acknowledgment that the franchise agreement has been terminated reduces the risk of erroneously enjoining Defendants from using the trademarks, proprietary marks, and trade secrets of the Dickey's system.

Moreover, the possible harm to Defendants is reduced by having already begun the transition.  After all, the possible harm to Defendants is the financial loss that would be suffered by having to close its business doors in order to remove from the premises anything that would represent to the public that the restaurant is affiliated with Dickey's.  By already beginning to transition from Dickey's to another restaurant the time needed to make a full transition is likely reduced.

Even in the absence of these factors, the harm that would be caused to Plaintiff in the absence of a TRO would outweigh the harm to Defendant.  Whatever financial harm may be caused to Defendant is minimal when compared to the harm that could be caused to the reputation and good will of Plaintiff.

### 4.  Public Interest

Granting  a TRO will not disserve the public interest, as it will minimize consumer and public confusion regarding the original source or affiliation of Defendants' goods and services. Conversely, not granting a TRO may mislead the public into believing that Dickey's has a vested interest ensuring the enjoyment, health, and safety of people that frequent the restaurant, when this is not actually true.  Additionally, if Defendants were permitted to continue operating a restaurant held out to the public as a Dickey's then it would allow Defendants to benefit from the years of hard work that it has taken to build that brand.  Allowing such conduct would have a chilling effect on the capitalistic principles that led to giving Defendants the opportunity to benefit from Plaintiff's hard work when signing the Franchise Agreement.

### III. Conclusion

**IT IS THEREFORE ORDERED** that Defendants, their attorneys, agents, directors, representatives, and those persons or entities acting in concert with them are enjoined and restrained:

1. Representing to the public that the restaurant located at 2441 N. Snow Goose Way, Meridian, Idaho, is presently or formerly a franchisee of Dickey's.

2. Using, in any manner, any confidential methods, procedures, techniques, and trade secrets, associated with the System, the trademarks, the Proprietary Marks, and all other distinctive forms, slogans, signs, symbols, devices associated with the System, as set forth in the Manuals including all signs, advertising materials, displays, stationary, forms, and other articles which display the trademarks, the Proprietary Marks and trade secrets as those terms are defined in the Franchise Agreement.

3. Using, disclosing, advertising, promotion or display of the trademarks, Proprietary Marks and trade secrets of Dickey's Barbecue Restaurants, Inc., or its System as such terms are defined in the Franchise Agreement.

4. Offering for sale, sale or distribution of food, food products and catering services in any manner by falsely designating the origin of the Defendants' products in a manner that is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants with, or to Plaintiff Dickey's Barbecue Restaurants, Inc. or its System.

5. Passing off or otherwise representing to the public in any way that the products sold by Defendants emanate from or are related in source or sponsorship or any other way to Plaintiff Dickey's Barbecue Restaurants, Inc.

6. Infringing on Plaintiff Dickey's Barbecue Restaurants, Inc. common-law rights by using, advertising, promotion, display, distribution, offering for sale, and sale of any product copying Plaintiff's System, trademarks, Proprietary Marks and trade secrets.

7. Injuring Plaintiff Dickey's Barbecue Restaurants, Inc.'s business reputation or diluting the distinctive quality of Dickey's Barbecue Restaurants, Inc.'s System, trademarks, Proprietary Marks and trade secrets.

8. Engaging in deceptive trade practices or acts in the conduct of their business by using, advertising, promotion, display, distribution, offering for sale, and sale of food, food products, and catering services at their restaurant or otherwise, copying the Dickey's Barbecue Restaurants, Inc.'s System, trademarks, Proprietary Marks and trade secrets.

**IT IS FURTHER ORDERED** that:

9. This Temporary Restraining Order shall become effective when Plaintiff Dickey's Barbecue Restaurants, Inc. posts a surety bond with the Clerk of the Court in the sum of  $5,000 in order to secure the payment of any costs and damages that may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

10. Plaintiff Dickey's Barbecue Restaurants, Inc. act with all haste to serve a copy of this Order on each Defendant or counsel for any Defendant by personal service, or by sending it by Express Mail or Federal Express.

11. This Order will continue in effect until 11:30 a.m. (Central Time) on March 17, 2010, or until it is otherwise altered by a written and signed order of the Court.

12. Defendants have until March 10, 2010, to properly file a response to Defendants' Motion for a Preliminary Injunction, and Plaintiff's reply shall be filed by March13, 2010.

**IT IS SO ORDERED.**

Signed this 3rd day of March, 2010 at 11:45 a.m. (Central Time)

JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE