

ORIGINAL

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2010 APR -8  AM 9: 38

DEPUTY CLERK ___ Nt

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

DICKEY'S BARBECUE RESTAURANTS, INC. §
    Plaintiff,    §
         §
         §   CIVIL ACTION No. 3:10-CV-0300-P
vs.          §
         §
LIRA, LLC and LUIGI MANGIONE  §
         §
    Defendants.   §
         §
         §
         §

---

### BRIEF IN SUPPORT OF PLAINTIFF'S  (1) MOTION FOR DEFAULT JUDGMENT ON LIABILITY ISSUES  (2) MOTION FOR ENTRY OF PERMANENT INJUNCTION, (3) MOTION FOR CIVIL CONTEMPT AND SANCTIONS AND (4) MOTION TO CORRECT RECORD PURSUANT TO FRCP 60 (a)

Respectfully submitted,

WESNER COKE & CLYMER, P.C.

By: _Stephen A. Coke_
   Stephen A. Coke
   Texas State Bar No. 04519000
   Richard W. Winn
   Texas State Bar No. 21779700
   Three Galleria Tower - Suite 800
   13155 Noel Road
   Dallas, Texas  75240
   Telephone: (972) 770-2600
   Fax: (972) 770-2601
   E-Mail: scoke@wccpc.com
   ATTORNEYS FOR PLAINTIFF
   DICKEY'S BARBECUE RESTAURANTS, INC.

# **TABLE OF CONTENTS**

|  | Page |
|---|---|
| Table of Authorities | ii-v |
| I. Entry of Default Judgment on Liability Issues | 1 |
| II. Remedies for Default | 4 |
| A. Damages | 5 |
| B. Entry of Permanent Injunction | 7 |
| 1. Lanham Act – 15 USC §1051 et. seq. | 8 |
| a. Elements | 8 |
| b. Analysis of Elements | 9 |
| 1). Actual Success on the Merits | 9 |
| a. Use of Mark in Commerce Without Consent | 9 |
| b. Unauthorized Use Likely to Cause Confusion, or to Cause Mistake or to Deceive | 11 |
| 2. No Adequate Remedy at Law | 12 |
| 3. Balancing of Hardships | 13 |
| 4. Public Interest | 15 |
| 2. Remaining State Law Claims | 15 |
| III. Motion for Civil Contempt | 20 |
| IV. Motion to Correct Record Pursuant to FRCP 60 (a) | 23 |

i

## TABLE OF AUTHORITIES

### CASES                                                                          PAGE

7-Eleven, Inc. v. Puerto Rico-7, Inc.,                                    10,11,13,14,15
2009 U.S. Dist. LEXIS 115064 at *27,28,30,31 (N.D. Tex. Dec. 9, 2009) (Boyle, J)

Amer. Airlines, Inc. v. Allied Pilots Assoc.                                        20,22
228 F.3d 574,578, 585 (5th Cir. 2000)

American Rice, Inc. v. Producers Rice Mill, Inc.                                        8
519 F.3d 321, 329 (5th Cir. 2008)

American Trucking Associations, Inc. v. Frisco Transportation Co.,                     24
358 U.S. 133, 145, 70 S.Ct. 179 1890-181 (1958)

Amerispec, Inc. v. Metro Inspection Services, Inc.,                                 17,19
2001 U.S. Dist. LEXIS 9259 at *10,11,12-14,19-21 (N.D. Tex.),(July 3, 2001) (Fitzwater, J.)

AMF Tuboscope v. McBryde,                                                              18
618 S.W.2d 105,108 (Tex. App. Corpus Christi 1981, writ ref. n.r.e.)

Bonewitz v. Bonewitz,                                                                   3
726 S.W.2d 227,230 (Tex. App.-Austin 1987, writ ref'd n.r.e.)

Brown v. Bandai America, Inc.,                                                          3
2002 U.S. Dist. LEXIS 8664 at *6-7 (N.D. Tex.) (May 15, 2002) (Kaplan J.)

Burger King Corp. v. Mason,                                                            11
710 F.2d 1480, 1491-92 (11th Cir. 1983)

Burger King v. Lee,                                                                    14
766 F.Supp. 1149, 1157 (S.D. Fla 1991)

Chandler v. Mastercraft Dental, Corp.                                                  18
739 S.W.2d 460-464-65 (Tex. App.-Ft. Worth 1987, writ denied)

Chevron Intellectual Property, LLC v. Allen,                           2,3,4,5,7,8,9,12,13,14
2009 U.S. Dist. LEXIS, 74751 at *5-9 (N.D. Tex. August 24, 2009) (O'Connor, J.)

Cottman Transmission Systems, Inc. v. Martins,                                         15
1993 U.S. Dist. LEXIS 18221 at *53 (E.D. Penn.) (December 27, 1993)

Delilah Media Group, L.P. v. Raymer,                                                    4
 2005 U.S. Dist. LEXIS 13253 at * 12 (N.D. Dallas) (June 30, 2005) (Fish, J.)

Dunkin Donuts Franchised Restaurants, L.L.C. v. Shrijee Investments, Inc.   11,13,14
2008 U.S. Dist. LEXIS 107353 at *25-27 (E.D. Mich. December 23, 2008) (Murphy, J.)

EDS Corp. v. Powell,   18
508 S.W.2d 137,138-139 (Tex. App.-Dallas 1974, no writ), (three year restriction upheld);

Frisch's Restaurants, Inc. v. Elby's Big Boy,   12
670 F.2d 642 (6th Cir. 1982) cert. den. 459 U.S. 916, 103 S.Ct. 231 (1982)

Gucci America, Inc. v. Gucci,   6,22
2009 U.S. Dist. LEXIS 124888 at *99,103-106 (S.D. N.Y.) (August 5, 2009)

Icho v. Packestswitch.Com, Inc.   24
2010 U.S. Dist. LEXIS 10118 at *1-2,14-16 (N.D. Calif.) (Feb. 5, 2010)

Isuani v. Manske-Sheffield Radiology Group, P.A.,   18
805 S.W.2d (Tex. Civ. App.-El Paso 1990, writ denied)

Kelley v. Carr,   6
567 F. Supp.8 31, 841 (W.D. Mich. 1983)

KFC Corporation v. Goldey,   11,12,13
714 F. Supp. 264, 267 (W.D. Kent. 1989)

Lindsey v. Prive Corp.,   2,3,4
161 F.3d 886, 893 (5th Cir. 1998)

Luper v. A. Beam's Security,   24
(In Re Lee Way Holding Co.) 113 B.R. 406,407-408 (S.D.-Ohio 1990)

Meineke Discount Muffler v. Jaynes,   17,18
999 F.2d 120, 122-123 (5th Cir. 1999)

New York Life Ins. Co. v. Brown,   3
84 F.3d 137, 141 (5th Cir. 1996)

Nishimatsu Constr. Co. v. Houston National Bank,   4
515 F.2d 1200, 1206 (5th Cir. 1975)

Pipe Wrap, LLC v. P3 Industrial Technologies, Inc.   1,3
2009 U.S. Dist. EXIS 77506 at *7 (S.D. Tex. August 31, 2009)

Piquante Brands International, Ltd. v. Chloe Foods Corp.,   7
2009 U.S. Dist. LEXIS 50557 at *14-19 (D.C. NJ) (June 16, 2009)

Pizza Hut, Inc. v. White,                                           9,10,11,12,13,14,19
2002 U.S. Dist. LEXIS 19930 at *7-12 (N.D. Tex) (October 18, 2002) (Lindsay, J.)

Playboy Enters, Inc., v. Webbworld, Inc.                                          8
991 F.Supp. 543,561 (N.D. Tex. 1997) aff'd 168 F.3d 486 (5th Cir. 1999)

Professional Golfers Ass'n. of America v. Bankers Life & Cas. Co.,               9
514 .2d 665, 670 (5th Cir. 1975)

Property Tax Assoc., Inc. v. Staffeldt,                                        18,19
800 S.W.2d 349, 352 (Tex. Civ. App.-El Paso 1990, writ denied)

Quantum Fitness Corp. v. Quantum Lifestyle Ctrs., L.L.C.
1583 F.Supp. 2d 810, 831 (S.D. Tex. 1999)

Ramada Franchise Sys. Co. v. Jacobcourt, Inc.                               10,11,12
2001 U.S.. Dist. LEXIS 6650 at *7-8 ( N.D.Tex. May 17, 2001) (Fitzwater, J.)

Taco Cabana Int'l, Inc. v. Turo Pesos, Inc.                                      6
932 F.2d 1113, 1127 (5th Circ. 1991)

TGI Friday's, Inc. v. Great Northwest,                                   10,12,13,14,15
2009 U.S. Dist. LEXIS 73768 at *8-9  (N.D. Tex.) (August 20, 2009)(Fitzwater.J.)

T-Mobile USA, Inc. v. Shazia & Noushall Corp.                      2,3,4,5,7,8,9,12,13,14
2009 U.S. Dist. LEXIS 59014 at *4 -6,9-10, (N.D. Tex. July 10, 2009)

Twist & Shout Music v. Longneck Xpress, N.P.,                                    9
441 F. Supp. 2d 782,785 (E.D. Tex. 2006)

United States v. Fincanon,                                                     3,4
2009 U.S. Dist. LEXIS 8721 at *7 (N.D. Tex. Feb. 6, 2009)

United States v. Kellog (In Re West Texas Marketing Corp.),                     24
12 F.3d 497,503-504 (5th Cir. 1994)

Warm Bros., Inc. v. North East Hardwood Flooring, Inc.,                          7
2009 U.S. Dist. LEXIS 108158 at *2-4 (W.D. Wash.) (November 10, 2009)

Whitcraft v. Brown,                                                             20
570 F.3d 268,271 (5th Cir. 2009)

Whitfield v. Pennington,                                                      20,22
832 F.2d 909,913-914 (5th Cir. 1987)

## RULES AND STATUTES

F.R.C.P. 55(a)                                              3

F.R.C.P. 55 (b) (2)                                         6

F.R.C.P. 55(b)(2)(A), (B) and (C)                          6

F.R.C.P. 60(a)                                          24,25

Lanham Act – 15 USC §1051 et. seq.                  5,8,15,19

15 U.S.C. §1116 (a)                                        7

15 U.S.C. §1117 (a)                                        5

Tex. Bus. & Com. C. §15.50(a)                             17

Tex. Bus.& Com. C. §15.51(a)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| DICKEY'S BARBECUE RESTAURANTS, INC. §<br>Plaintiff, §<br>§<br>§<br>vs. §<br>§<br>§<br>LIRA, LLC and LUIGI MANGIONE §<br>§<br>§<br>Defendants. §<br>§<br>§<br>§ | CIVIL ACTION No. 3:10-CV-0300-P |

## BRIEF IN SUPPORT OF PLAINTIFF'S (1) MOTION FOR DEFAULT JUDGMENT ON LIABILITY ISSUES (2) MOTION FOR ENTRY OF PERMANENT INJUNCTION, (3) MOTION FOR CIVIL CONTEMPT AND SANCTIONS AND (4) MOTION TO CORRECT RECORD PURSUANT TO FRCP 60 (a)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff Dickey's Barbecue Restaurants, Inc. ("Plaintiff") and files this its Brief in Support of Plaintiff's (1) Motion for Default Judgment on Liability Issues (2) Motion for Entry of Permanent Injunction (3) Motion for Civil Contempt and Sanctions and (4) Motion to Correct Record Pursuant to FRCP60(a) as follows:

I. Entry of Default Judgment on Liability Issues

The Fifth Circuit applies a "three-step process" in order for a plaintiff to obtain a default judgment, including the following distinct steps: (1) default;(2)entry of default; and (3) default judgment. Pipe Wrap, LLC v. P3 Industrial Technologies, Inc. 2009 U.S. Dist. LEXIS 77506 at *4-5 (S.D. Tex.) (August 31, 2009). "A default occurs when a defendant has failed to plead or

BRIEF IN SUPPORT OF PLAINTIFF'S (1) MOTION FOR DEFAULT JUDGMENT ON LIABILITY ISSUES (2) MOTION FOR ENTRY OF PERMANENT INJUNCTION (3) MOTION FOR CIVIL CONTEMPT AND SANCTIONS AND (4) MOTION TO CORRECT RECORD PURSUANT TO FRCP 60(a)

Page 1

otherwise respond to the complaint within the time required by the Federal Rules". Ibid "An entry of default is what the clerk enters when the default is established by affidavit or otherwise." Id. "After defendant's default has been entered, Plaintiff may apply for a judgment based upon such default. This is a *default judgment*." Id.

In determining whether to grant a default judgment, the Court must consider the following relevant factors:

    (a)    whether the default was caused by a good faith mistake or excusable neglect;

    (b)    whether there has been substantial prejudice;

    (c)    the harshness of the default judgment;

    (d)    whether there are material issues of fact;

    (e)    whether grounds for default judgment are clearly established;

    (f)    whether the court would think itself obligated to set aside the
           default on the defendant's motion.

T-Mobile USA, Inc. v. Shazia & Noushall Corp. 2009 U.S. Dist. LEXIS 59014 at *4 (N.D. Tex. July 10, 2009) and Chevron Intellectual Property, LLC v. Allen, 2009 U.S. Dist. LEXIS, 74751 at *5 (N.D. Tex. August 24, 2009) (O'Connor, J.) both citing Lindsey v. Prive Corp., 161 F.3d 886, 893 (5th Cir. 1998).

As more fully detailed in the Officer's Returns and the Gold Sealed Certificates of the Texas Secretary of State which are filed and maintained in the Court's case file jacket, Defendants were both properly served with Summons in this case on February 23, 2010 by and through the Texas Secretary of State. "[S]ervice of process on the Secretary of State constitutes

BRIEF IN SUPPORT OF PLAINTIFF'S (1) MOTION FOR DEFAULT JUDGMENT ON LIABILITY ISSUES (2) MOTION FOR ENTRY OF PERMANENT INJUNCTION (3) MOTION FOR CIVIL CONTEMPT AND SANCTIONS AND (4) MOTION TO CORRECT RECORD PURSUANT TO FRCP 60(a)

Page 2

constructive service on the non-resident defendant thereby triggering the non-resident defendant's answer date." <u>Bonewitz v. Bonewitz</u>, 726 S.W.2d 227,230 (Tex. App.-Austin 1987, writ ref'd n.r.e.) cited with approval by <u>Brown v. Bandai America, Inc.</u>, 2002 U.S. Dist. LEXIS 8664 at *6-7 (N.D. Tex.) (May 15, 2002) (Kaplan J.).  The deadline for Defendants to answer or otherwise respond or appear herein was March 16, 2010.  In an abundance of caution, Plaintiff did not file its Plaintiff's Request for Clerk to Enter Default Pursuant to FRCP 55(a) until March 26, 2010, which is ten (10) days after Defendants' deadline and more than twenty-one (21) days after **actual receipt** of the Summons by Defendants in Meridian Idaho by certified mail, return receipt requested..

As of this date, "Defendants have not offered any evidence that their failure to appear is the product of a good faith mistake or excuse." <u>T-Mobile</u> at *5; <u>Chevron</u> at *5,  both citing <u>Lindsey</u> at 893.  Defendants have ignored the Complaint by failing to respond, which has substantially prejudiced the Plaintiff's interest in resolving its claims against them, including discovery of damages under the Lanham Act. <u>T-Mobile</u> at *5; <u>Chevron</u> at *5, <u>See also</u> <u>United States v. Fincanon</u>,  2009 U.S. Dist. LEXIS 8721 at *7 (N.D. Tex. Feb. 6, 2009) (holding that a Plaintiff's interests were prejudiced because the defendant's failure to respond brought the adversary process to a halt).  The "failure to plead or otherwise respond to the complaint within the time required by the Federal Rules is a clear default."  <u>Pipe Wrap, LLC v. P3 Industrial Technologies, Inc.</u> 2009 U.S. Dist. EXIS 77506 at *7 (S.D. Tex. August 31, 2009) citing <u>New York Life Ins. Co. v. Brown</u>, 84 F.3d 137, 141 (5th Cir. 1996).  "Since the Defendants had ample time to appear in this action, a default judgment would not be unusually harsh." <u>T-Mobile</u> at *5;

BRIEF IN SUPPORT OF PLAINTIFF'S (1) MOTION FOR DEFAULT JUDGMENT ON LIABILITY ISSUES  (2) MOTION FOR ENTRY OF PERMANENT INJUNCTION (3) MOTION FOR CIVIL CONTEMPT AND SANCTIONS AND (4) MOTION TO CORRECT RECORD PURSUANT TO FRCP 60(a)

Page 3

Chevron at *6, both citing Fincanon at *7. See also Lindsey, 161 F.3d at 893. "[T]he defendant by his default admits the plaintiff's well pleaded allegations of fact." Nishimatsu Constr. Co. v. Houston National Bank, 515 F.2d 1200, 1206 (5th Cir. 1975). Defendants by their default, admitted Plaintiff's allegations of fact and are barred from contesting the facts admitted. Delilah Media Group, L.P. v. Raymer, 2005 U.S. Dist. LEXIS 13253 at * 12 (N.D. Dallas) (June 30, 2005) (Fish, J.) citing Nishimatsu, 515 F.2d at 1206.

"The grounds for default judgment are clearly established, as Defendants were properly served with the summonses and complaint, but failed to answer or otherwise appear in this action." T-Mobile at *5-6; Chevron at *6. Further, in addition to the attempts to serve the Summons on each Defendant, both Plaintiff's counsel and the Court itself have made attempts to contact both Defendants and their apparent counsel by telephone, facsimile and Federal Express with respect to the temporary restraining order and although Defendant Luigi Mangione, individually and as a principal of Defendant Lira, LLC has in fact been contacted by Plaintiff's counsel and has confirmed actual notice of these proceedings, both Defendants have continued to ignore these proceedings without providing the Court a reason to delay granting a default judgment. (Coke Affidavit). T-Mobile at *6; Chevron at *6. Accordingly, the procedural prerequisites for entering a default judgment against both Defendants have been satisfied.

II. Remedies for Default

After determining that a default judgment is appropriate, the Court next determines "whether it would be appropriate to award Plaintiff the remedies requested in its Motion upon entry of default judgment." T-Mobile at *6; Chevron at *7. However, in this type of trademark

BRIEF IN SUPPORT OF PLAINTIFF'S (1) MOTION FOR DEFAULT JUDGMENT ON LIABILITY ISSUES (2) MOTION FOR ENTRY OF PERMANENT INJUNCTION (3) MOTION FOR CIVIL CONTEMPT AND SANCTIONS AND (4) MOTION TO CORRECT RECORD PURSUANT TO FRCP 60(a)



infringement Lanham Act case, the amount and extent of actual damages resulting from lost profits, lost sales, lost revenues and out of pocket expenses are inherently difficult to ascertain without discovery of the books and records of the Defendants.    Therefore, as more fully discussed below, Plaintiff seeks only a default judgment against Defendants on liability issues at this time and requests that the Court retain for further consideration a determination of the amount and extent of Plaintiff's damages.

A. <u>Damages</u>

15 U.S.C. §1117 (a) provides for the recovery of damages for trademark violations, including, without limitation, (a) defendant's profits, any damages sustained by the plaintiff and the costs of the action. "The court shall assess such profits and damages or cause the same to be assessed under its direction" <u>Ibid</u>.  In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." <u>Id</u>.  The documents needed in order for Plaintiff to calculate its damages are exclusively in the possession of the Defendants.  Plaintiff has alleged, and Defendants have now admitted by their default that:

> a) prior to the termination of the Franchise Agreement, Defendant Lira has conducted certain remote off-site sales including, without limitation, sales from a trailer which is located routinely at Boise State University; b) subsequent to the termination of the Franchise Agreement, Defendants have profited from certain sales arising from Defendants' infringement, false designation of origin, dilution of trademark and other unfair competition without the license, consent or permission of the Plaintiff; and c) Defendant Lira has further failed to disclose all sales records for all operations, both on-site and off-site, or to allow Dickey's representatives to inspect the restaurant premises and review all accounting records.

<u>BRIEF IN SUPPORT OF PLAINTIFF'S  (1) MOTION FOR DEFAULT JUDGMENT ON LIABILITY ISSUES  (2) MOTION FOR ENTRY OF PERMANENT INJUNCTION (3) MOTION FOR CIVIL CONTEMPT AND SANCTIONS AND (4) MOTION TO CORRECT RECORD PURSUANT TO FRCP 60(a)</u>

Page 5

The exact amounts and nature of the amounts due to Plaintiff are unknown to Plaintiff and can not be exactly determined without an accounting of the financial and accounting books and records of Defendants. In this regard, F.R.C.P. 55 (b) (2) authorizes the Court to conduct hearings or make referrals to enter or effectuate judgment including the conduct of an accounting to determine the amount of damages or to investigate other matters. See Gucci America, Inc. v. Gucci, 2009 U.S. Dist. LEXIS 124888 at *103-106 (S.D. N.Y.) (August 5, 2009). The District Court is endowed with considerable discretion in fashioning an appropriate remedy for infringement especially when the defendant's withholding of sales records or other conduct obstructing the ascertainment of damages results in imprecise or incomplete calculations which fail to do justice. Taco Cabana Int'l, Inc. v. Turo Pesos, Inc. 932 F.2d 1113, 1127 (5th Circ. 1991). An investigation of the financial books and records of Defendants is necessary since there is no adequate remedy at law and in order to establish the amounts due to Plaintiffs. "A default judgment on well-pleaded allegations establishes defendant's **liability**; plaintiff must still establish the extent of damages" (emphasis added). Kelley v. Carr, 567 F. Supp.8 31, 841 (W.D. Mich. 1983). The Court is empowered by F.R.C.P. 55(b)(2)(A), (B) and (C) to grant Plaintiff a default judgment on liability only, enter a permanent injunction, conduct further hearings or make referrals in order to conduct an accounting, determine the amount of damages or investigate other matters. See Kelley, 567 F. Supp. at 841-844 (granting default judgment, entering permanent injunction, appointing a Receiver to conduct accounting to determine damages and ordering disgorgement of profits resulting from violative actions) See also Warm

BRIEF IN SUPPORT OF PLAINTIFF'S (1) MOTION FOR DEFAULT JUDGMENT ON LIABILITY ISSUES (2) MOTION FOR ENTRY OF PERMANENT INJUNCTION (3) MOTION FOR CIVIL CONTEMPT AND SANCTIONS AND (4) MOTION TO CORRECT RECORD PURSUANT TO FRCP 60(a)

Page 6

Bros., Inc. v. North East Hardwood Flooring, Inc., 2009 U.S. Dist. LEXIS 108158 at *2-4 (W.D. Wash.) (November 10, 2009) (granting default judgment, entering permanent injunction, ordering defendants to file and serve a report which provides documentation of all infringing sales, and retaining for later consideration a determination of the amount of plaintiff's damages); Piquante Brands International, Ltd. v. Chloe Foods Corp., 2009 U.S. Dist. LEXIS 50557 at *14-19 (D.C. NJ) (June 16, 2009) (court, noting defendant's failure to respond and plaintiff's difficulty in ascertaining specific damages, granted default judgment, entered permanent injunction and scheduled hearing for future consideration of Plaintiff's damages). Plaintiffs request that the Court order an accounting of the transactions between the parties and allow Plaintiff sufficient time to conduct discovery of such matters. Obviously, since Defendants have failed to answer or otherwise respond or answer herein and have ignored this lawsuit, obtaining such discovery may be difficult without the assistance of the Court and its powers to compel and sanction parties for their civil contempt and failure to comply with the Court's orders.

Therefore, Plaintiff has contemporaneously sought a Motion for Civil Contempt as more fully discussed below.

B.  Entry of Permanent Injunction

The Court must next consider whether a permanent injunction is an appropriate remedy for Defendants' default in this case. "Under 15 U.S.C. §1116 (a) this Court has power to grant a permanent injunction for a violation of the Lanham Act." T-Mobile at *9; Chevron at *7-8. Plaintiff further requests that this Court enter a permanent injunction for Defendants' violation of

BRIEF IN SUPPORT OF PLAINTIFF'S (1) MOTION FOR DEFAULT JUDGMENT ON LIABILITY ISSUES (2) MOTION FOR ENTRY OF PERMANENT INJUNCTION (3) MOTION FOR CIVIL CONTEMPT AND SANCTIONS AND (4) MOTION TO CORRECT RECORD PURSUANT TO FRCP 60(a)

Page 7

the covenant not to compete contained in Article 18 of the Franchise Agreement.  In order to obtain a permanent injunction, Plaintiff must establish (1) actual success on the merits; (2) no adequate remedy at law; (3) the threatened injury to the plaintiff outweighs any damage to the defendant; (4) the injunction will not disserve the public interest. T-Mobile at *9; Chevron at *7-8,  both citing Playboy Enters. Inc., v. Webbworld, Inc. 991 F.Supp. 543,561 (N.D. Tex. 1997) aff'd 168 F.3d 486 (5th Cir. 1999)

1. Lanham Act – 15 USC §1051 et. seq.

a. Elements

"To recover on a claim of trademark infringement, a plaintiff must first show that the mark is legally protectable and must then establish infringement by showing a likelihood of confusion." American Rice, Inc. v. Producers Rice Mill, Inc. 519 F.3d 321, 329 (5th Cir. 2008).

"To be protectable, a mark must be distinctive, either inherently or by achieving secondary meaning in the minds of the public." Ibid.  "The Lanham Act provides a cause of action for infringement where one uses (1) any reproduction, counterfeit, copy, or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution or advertising of any goods; (5) where such use is likely to cause confusion or to cause mistake or to deceive" Id. (internal quotations omitted).

"The factors used by this Circuit in determining whether a likelihood of confusion exists are (1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (6) actual confusion; and (8) degrees of care exercised by

BRIEF IN SUPPORT OF PLAINTIFF'S (1) MOTION FOR DEFAULT JUDGMENT ON LIABILITY ISSUES  (2) MOTION FOR ENTRY OF PERMANENT INJUNCTION (3) MOTION FOR CIVIL CONTEMPT AND SANCTIONS AND (4) MOTION TO CORRECT RECORD PURSUANT TO FRCP 60(a)

Page 8

potential purchasers." Id.   "The absence or presence of any one factor ordinarily is not dispositive; indeed a finding of a likelihood of confusion need not be supported by a majority of the factors." Id.  The 5th Circuit has "determined that to prevail on a post-termination trademark infringement claim, the registrant of the trademark [Plaintiff] had to show that (1) its mark was used in commerce by the defendant without its consent and (2) the unauthorized use is likely to cause confusion, or to cause mistake or to deceive." Pizza Hut, at *7-8 citing Professional Golfers Ass'n. of America v. Bankers Life & Cas. Co., 514 .2d 665, 670 (5th Cir. 1975).

   b.  Analysis of Elements

   1).  Actual Success on the Merits

   "Courts have acknowledged that default against a defendant is tantamount to actual success on the merits." T-Mobile at *10 and Chevron at *8, both citing e.g. Twist & Shout Music v. Longneck Xpress, N.P., 441 F. Supp. 2d 782,785 (E.D. Tex. 2006).

   a.  Use of Mark in Commerce Without Consent

   The evidence establishes that Plaintiff rightfully terminated the Franchise Agreement based upon Defendant Lira's failure to pay applicable royalty fees and contributions to the marketing fund, as well as failure to be open for business on a required date, failure to account for offsite sales, failure to disclose all sales records, failure to allow an inspection and failure to allow for review of accounting records.  The evidence further establishes that Plaintiff notified Defendant of this default, that such fees and  contributions were due and owing at the time of both the default and the termination and that Defendant is presently in arrears in the approximate amount of $51,050.96 as of February 9, 2010.  See e.g. Pizza Hut, at *8-9.

BRIEF IN SUPPORT OF PLAINTIFF'S  (1) MOTION FOR DEFAULT JUDGMENT ON LIABILITY ISSUES  (2) MOTION FOR ENTRY OF PERMANENT INJUNCTION (3) MOTION FOR CIVIL CONTEMPT AND SANCTIONS AND (4) MOTION TO CORRECT RECORD PURSUANT TO FRCP 60(a)

Page 9

Defendant Lira was notified of its termination and has violated its post termination obligations under the termination letter and the Franchise Agreement. In particular, Defendant Lira has continued to use the Trademarks, Proprietary Marks and Trade Secrets of the Dickey's System[1] even after termination. The Sibley Affidavit describes the first post termination on-site inspection of the terminated franchise location on January 28, 2010. The Parker Affidavit describes the second post termination on-site inspection of the terminated location on March 19, 2010. The Sibley Affidavit and Parker Affidavit collectively establish that Defendants have continued to use the Trademarks, Proprietary Marks and Trade Secrets of the Dickey's System, both after termination of the Franchise Agreement, but also after Defendants received actual notice of the temporary restraining order. The Franchise Agreement gives Defendant Lira the right to use Plaintiff's marks while the agreement is in effect; however Article 17 B. of the Franchise Agreement expressly states that upon termination of the agreement, the franchisee must immediately and permanently cease to use the Trademarks, Proprietary Marks and Trade Secrets of the Dickey's System. See e.g. TGI Friday's, Inc. v. Great Northwest, 2009 U.S. Dist. LEXIS 73768 at *8-9   (N.D. Tex.) (August 20, 2009)(Fitzwater.J.)  Any continued use of the Trademarks, Proprietary Marks and Trade Secrets of the Dickey's System after termination are unauthorized. 7-Eleven, Inc. v. Puerto Rico-7, Inc., 2009 U.S. Dist. LEXIS 115064 at *27 (N.D. Tex. Dec. 9, 2009) (Boyle, J).  Defendant Lira "is an ex-licensee and the law is clear that termination of a trademark license precludes further use by the licensee." Id. quoting Ramada

---

[1] Plaintiff incorporates by reference the definitions of such terms contained in Plaintiff's Complaint.

BRIEF IN SUPPORT OF PLAINTIFF'S (1) MOTION FOR DEFAULT JUDGMENT ON LIABILITY ISSUES (2) MOTION FOR ENTRY OF PERMANENT INJUNCTION (3) MOTION FOR CIVIL CONTEMPT AND SANCTIONS AND (4) MOTION TO CORRECT RECORD PURSUANT TO FRCP 60(a)

Page 10

Franchise Sys. Co. v. Jacobcourt, Inc. 2001 U.S.. Dist. LEXIS 6650 at *7 ( N.D.Tex. May 17, 2001) (Fitzwater, J.).   Failure to pay past due fees related to a franchise is grounds for termination under the Franchise Agreement which includes a revocation of their authorization to use the Trademarks, Proprietary Marks and Trade Secrets of the Dickey's System.   Dunkin Donuts Franchised Restaurants, L.L.C. v. Shrijee Investments, Inc. 2008 U.S. Dist. LEXIS 107353 (E.D. Mich. December 23, 2008) (Murphy, J.).   Based upon the foregoing, it is clear that Defendant Lira's continued use of the Trademarks, Proprietary Marks and Trade Secrets of the Dickey's System, even after receipt of the temporary restraining order,   is unauthorized and without consent. (Parker Affidavit)   Plaintiff's likelihood of success on the merits on this issue is very substantial since "once a license is terminated, the ex-licensee has no authority to continue to use the licensor's mark and must be enjoined from further use of it".   KFC Corporation v. Goldey, 714 F. Supp. 264, 267 (W.D. Kent. 1989).

      b. Unauthorized Use Likely to Cause Confusion, or to Cause Mistake or to Deceive

The 5th Circuit "has held that the continued use of a trademark by one whose license has been cancelled satisfies the likelihood of confusion test and constitutes trademark infringement." 7-Eleven, at *28.  "Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks." Pizza Hut *9 citing Burger King Corp. v. Mason, 710 F.2d 1480, 1491-92 (11th Cir. 1983).  Since the Plaintiff has established that Defendant Lira is using Plaintiff's exact marks, not merely similar marks, the district court "need not analyze all 'digits of confusion'"

BRIEF IN SUPPORT OF PLAINTIFF'S (1) MOTION FOR DEFAULT JUDGMENT ON LIABILITY ISSUES (2) MOTION FOR ENTRY OF PERMANENT INJUNCTION (3) MOTION FOR CIVIL CONTEMPT AND SANCTIONS AND (4) MOTION TO CORRECT RECORD PURSUANT TO FRCP 60(a)

Page 11

considered as factors used in determining whether a likelihood of confusion exists. TGI Friday's at *8 See also Ramada at *8 ("continued use of an identical trademark by franchisee following termination of a franchise agreement constituted *ipso facto* evidence of a likelihood of confusion for purposes of establishing trademark infringement"). Courts have "concluded that likelihood of confusion is particularly great with respect to fast food restaurants which are the subject of impulse buying". KFC Corp. at *267 citing Frisch's Restaurants, Inc. v. Elby's Big Boy, 670 F.2d 642 (6th Cir. 1982) cert. den. 459 U.S. 916, 103 S.Ct. 231 (1982). Accordingly, Plaintiff has shown, under both applicable elements, that there is a substantial likelihood of success on the merits of its claim for trademark infringement. Pizza Hut, at *9.

## 2. No Adequate Remedy at Law

Plaintiff has "established a substantial threat that it will suffer irreparable injury if the injunction is not granted." Pizza Hut, at *10. Plaintiff has no adequate remedy at law because monetary damages will not prevent future infringing activity by Defendants. T-Mobile at *10; Chevron at *8 "In a trademark infringement case, a substantial likelihood of confusion constitutes irreparable injury." Ramada Franchise at *8. See also KFC Corp., at *7-8. If Defendant Lira is not enjoined from representing itself as a Dickey's franchisee, Plaintiff "is likely to suffer harm through the loss of control over its own good will and reputation." Pizza Hut, at *10. Since Plaintiff "has terminated the Franchise Agreement it is in no position to exercise control over the goods marketed" by Defendant Lira. Id. Further, a former franchisee "would have little incentive to promote the value of the franchise as a whole, and his unregulated conduct under the franchisor's trademark and systems could dilute the value of the marks, as

BRIEF IN SUPPORT OF PLAINTIFF'S (1) MOTION FOR DEFAULT JUDGMENT ON LIABILITY ISSUES (2) MOTION FOR ENTRY OF PERMANENT INJUNCTION (3) MOTION FOR CIVIL CONTEMPT AND SANCTIONS AND (4) MOTION TO CORRECT RECORD PURSUANT TO FRCP 60(a)

Page 12

well as significantly impact the customer good will associated with [Plaintiff's] reputation. Pizza Hut, at *11. "[W]hen a plaintiff incurs substantial financial expenses in protecting and promoting its trademarks, irreparable harm arises where the defendant is using its resources in such a way as to confuse the public as to believe it is dealing with the plaintiff." KFC Corp. at *267.  Since Defendant Lira continues to use Plaintiff's marks and holds its restaurant out as a licensed Dickey's location, it is inevitable that customers will be confused into believing that they are dining at a Dickey's restaurant.  TGI Friday's at *17.  The majority of Circuits, including the 5th Circuit, have  "held that a court may presume irreparable injury upon finding a likelihood of confusion in a trademark case." Ibid. at * 18 citing cases.  "In these cases… the harm stems not from the actual quality of the goods (which is largely irrelevant) but rather from the [franchisor's] loss of control over the quality of goods that bear its marks." Dunkin Donuts at *25.  "A bad experience in what is supposed to be a relatively uniform chain may influence the customer to view the entire franchise poorly". 7-Eleven at *30.  "Thus a court need only find that a defendant is liable for infringement or unfair competition for it to award injunctive relief." Dunkin Donuts at *25.  Upon a finding of actual success on the merits of its infringement claim, the Court also should conclude that it is likely that there is no adequate remedy at law if the injunction does not issue. Dunkin Donuts at *25.

3.  Balancing of Hardships

The evidence and the caselaw clearly establish that the threatened injury to Plaintiff, as franchisor, easily outweighs any damage to Defendants. T-Mobile at *10; Chevron at *8-9.  As discussed in the preceding section, Plaintiff loses control of its marks, faces a substantial threat

BRIEF IN SUPPORT OF PLAINTIFF'S  (1) MOTION FOR DEFAULT JUDGMENT ON LIABILITY ISSUES  (2) MOTION FOR ENTRY OF PERMANENT INJUNCTION (3) MOTION FOR CIVIL CONTEMPT AND SANCTIONS AND (4) MOTION TO CORRECT RECORD PURSUANT TO FRCP 60(a)

Page 13

to its reputation, suffers damage to its good will built though its brand, and stands to lose significant value if it cannot enjoin terminated franchisees. TGI Friday's at *22. "Although Defendants will suffer some amount of harm if an injunction is issued, courts usually hold that when defendants improperly use a plaintiff's trademark, the threatened harm to the plaintiff outweighs the threatened harm to the defendants." 7-Eleven at *30-31; Pizza Hut at *11-12. "Requiring Defendants to restrain from future infringement will cause them minimal to no harm, and any potential harm caused by requiring them to comply with the law is insignificant compared to the continuing harm to Plaintiff's business if the injunction is not granted." T-Mobile at *10; Chevron at *8-9. "Simply put, a terminated franchisee has no right to continue to hold itself out as an authorized franchisee, and enjoy its benefits. TGI Friday's at *24 citing Burger King Burger King v. Lee,766 F.Supp. 1149, 1157 (S.D. Fla 1991).

Further, the possibility of defaults and termination is inherent in any franchising system from which Defendants benefitted from in this case. Dunkin Donuts, at *26. "Rather than hanging out their own shingles and attempting to build goodwill, expertise and local product recognition from scratch, [Defendants] agreed to pay franchise and advertising fees to [Plaintiff] in exchange for access to its goodwill, business methods and product line. Ibid. The balance of hardships in this case entirely favors Plaintiff, since [t]o hold otherwise would be to deprive [Plaintiff] of the benefit of its system and eliminate any incentive for it to operate the system at all. Ibid at *27.

BRIEF IN SUPPORT OF PLAINTIFF'S (1) MOTION FOR DEFAULT JUDGMENT ON LIABILITY ISSUES (2) MOTION FOR ENTRY OF PERMANENT INJUNCTION (3) MOTION FOR CIVIL CONTEMPT AND SANCTIONS AND (4) MOTION TO CORRECT RECORD PURSUANT TO FRCP 60(a)

Page 14

4. <u>Public Interest</u>

The evidence and caselaw on the public interest factor weighs heavily in favor of Plaintiff by promoting compliance with intellectual property law. <u>T-Mobile</u> at *10; <u>Chevron</u> at *9. Since "society thrives on a capital based economy that rewards success through the competition, the public interest promotes the protection of valuable trademarks." <u>Ibid</u> at *12." The public interest is always served by requiring compliance with congressional statutes, such as the Lanham Act and by enjoining the use of infringing marks." <u>TGI Friday's</u> at *25 citing <u>Quantum Fitness Corp. v. Quantum Lifestyle Ctrs., L.L.C.</u> 83 F.Supp. 2d 810, 831 (S.D. Tex. 1999). <u>See also</u> <u>7-Eleven</u> at *31 ("[b]ecause an injunction would ensure compliance with both state and federal laws, as well as the parties' own agreement, it would not have an adverse effect on the public interest."). "The public also has an interest in not being deceived into believing that it is dining at a [Dickey's] that is no longer affiliated with [Dickey's]." <u>TGI Friday's</u> at *25. Accordingly, the public interest will not be disserved by a permanent injunction prohibiting the Defendants' from continuing to use the trademarks, Proprietary Marks and trade secrets of the Dickey's System.

2. <u>Remaining State Law Claims</u>

By virtue of Defendant's defaults, the Defendants have admitted liability as to the remaining state law claims including (a) breach of covenant not to compete; (b) misappropriation of trade secrets; (c) suit on a sworn account; (d) breach of contract (e) breach of guaranty and (f) suit for an accounting. <u>Cottman Transmission Systems, Inc. v. Martins,</u> 1993 U.S. Dist. LEXIS 18221 at *53 (E.D. Penn.) (December 27, 1993). At this time, Plaintiff is seeking default

BRIEF IN SUPPORT OF PLAINTIFF'S (1) MOTION FOR DEFAULT JUDGMENT ON LIABILITY ISSUES (2) MOTION FOR ENTRY OF PERMANENT INJUNCTION (3) MOTION FOR CIVIL CONTEMPT AND SANCTIONS AND (4) MOTION TO CORRECT RECORD PURSUANT TO FRCP 60(a)

Page 15

judgment on liability issues only with respect to these claims so that detailed discussion of damages and relief requested is not necessary at this time. Ibid. at *53-54.

However, the breach of the covenant not to compete deserves special attention since for purposes of the temporary restraining order, the Court deleted Plaintiff's requested relief that the Defendants be restrained from:

> a.    Operating the restaurant located at 2845 E. Overland Rd., Suite 190, Meridian, Idaho 83642…

> ***

> i.    Violating the confidentiality and non-compete agreements set forth in the Franchise Agreement including, without limitation, by owning, maintaining, operating, engaging in or having any financial or beneficial interest in, advising, assisting or making loans to, any business which is the same as or similar to a Dickey's Restaurant, including, but not limited to, any food business which offers barbecue-styled food as a primary menu item which business is, or is intended to be, located within a five (5) mile radius of 2845 E. Overland Rd., Suite 190, Meridian, Idaho 83642 for a period of two (2) years following the termination of the Franchise Agreement on January 10, 2010.

The basis of Plaintiff's requested relief is Article 18 of the Franchise Agreement which contains a covenant not to compete for two (2) years in any food business which offers barbecue-styled food as a primary menu item which business is, or is intended to be, located within a five (5) mile radius of the terminated franchise location. See Plaintiff's Complaint ¶ 43 with highlites of time and geographical restrictions.

In Texas "a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains

BRIEF IN SUPPORT OF PLAINTIFF'S (1) MOTION FOR DEFAULT JUDGMENT ON LIABILITY ISSUES (2) MOTION FOR ENTRY OF PERMANENT INJUNCTION (3) MOTION FOR CIVIL CONTEMPT AND SANCTIONS AND (4) MOTION TO CORRECT RECORD PURSUANT TO FRCP 60(a)

Page 16



limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." Tex. Bus. & Com. C. §15.50(a). "[A] court may award the promisee under a covenant not to compete damages, injunctive relief, or both damages and injunctive relief for a breach by the promisor of the covenant." Tex. Bus.& Com. C. §15.51(a).

The non-compete clause in this case complies with Tex. Bus. & Com. C. §15.50(a) because it is ancillary to or part of an otherwise enforceable agreement at the time the agreement was made since the Franchise Agreement is an otherwise enforceable agreement. Amerispec, Inc. v. Metro Inspection Services, Inc., 2001 U.S. Dist. LEXIS 9259 at *10-11 (N.D. Tex.),(July 3, 2001) (Fitzwater, J.). See also Meineke Discount Muffler v. Jaynes, 999 F.2d 120, 123 (5th Cir. 1999) (covenant not to compete was ancillary to trademark/ licensing agreement). Plaintiff and Defendants exchanged mutual promises and Plaintiff gave Defendants "consideration-proprietary information and training in exchange for their promise not to disclose it or use it competitively-that gives rise to [Plaintiff's] interest in restraining them from competing. Amerispec at *11.

The dispositive issue then becomes whether Defendants were selling the types of restaurant food and services that were constrained by the covenant not to compete. Amerispec, at *12.

Both the pre-suit inspection referenced in the Sibley Affidavit and the First Supplement to Affidavit of Daniel Sibley and the post-suit inspection referenced in the Parker Affidavit establish that (a) Defendants are still operating a restaurant at the terminated franchise

BRIEF IN SUPPORT OF PLAINTIFF'S (1) MOTION FOR DEFAULT JUDGMENT ON LIABILITY ISSUES (2) MOTION FOR ENTRY OF PERMANENT INJUNCTION (3) MOTION FOR CIVIL CONTEMPT AND SANCTIONS AND (4) MOTION TO CORRECT RECORD PURSUANT TO FRCP 60(a)

Page 17

location;(b) Defendants still offer barbecue styled food as a primary menu item; (c) the restaurant location remains within the prescribed five (5) mile radius; and (d) less than the required two (2) years have elapsed since the termination of the Franchise Agreement on January 10, 2010. Therefore, Defendants are clearly in violation of the covenant not to compete contained in Article 18 of the Franchise Agreement.

The time and geographical restrictions contained in the covenant not to compete in Article 18 of the Franchise Agreement are conservative restrictions and fully supported by Texas caselaw.

Time restrictions from 2-5 years are generally upheld which is much more onerous than the two year time restriction in this case. AMF Tuboscope v. McBryde, 618 S.W.2d 105,108 (Tex. App. Corpus Christi 1981, writ ref. n.r.e.), ("Two to five years has repeatedly been held to be a reasonable time for non-competition"). EDS Corp. v. Powell, 508 S.W.2d 137,138-139 (Tex. App.-Dallas 1974, no writ), (three year restriction upheld); Chandler v. Mastercraft Dental, Corp. 739 S.W.2d 460-464-65 (Tex. App.-Ft. Worth 1987, writ denied), (five year restriction upheld).

Geographical limitations to a particular county where the person worked or the terminated franchise was located are routinely upheld which is much more onerous than the five (5) mile radius in this case. Meineke Discount Muffler v. Jaynes, 999 F.2d 120, 122-123 (5th Cir. 1999), (upholding franchise agreement with covenant not to compete within 20 mile radius of franchise location); See also Isuani v. Manske-Sheffield Radiology Group, P.A., 805 S.W.2d

BRIEF IN SUPPORT OF PLAINTIFF'S (1) MOTION FOR DEFAULT JUDGMENT ON LIABILITY ISSUES (2) MOTION FOR ENTRY OF PERMANENT INJUNCTION (3) MOTION FOR CIVIL CONTEMPT AND SANCTIONS AND (4) MOTION TO CORRECT RECORD PURSUANT TO FRCP 60(a)

(Tex. Civ. App.-El Paso 1990, writ denied) (fifteen mile limitation reasonable) and Property Tax

Assoc., Inc. v. Staffeldt, 800 S.W.2d 349, 352 (Tex. Civ. App.-El Paso 1990, writ denied),

(county wide restraint reasonable)..

    Since the stated goal of the Texas statute and the Lanham Act have similar goals "to

protect the goodwill or other business interest of the promisee," an analysis of the permanent

injunction factors will be substantially the same as the analysis above with respect to the Lanham

Act claim since, as discussed above, the Lanham Act protects the franchisor's contractual rights

in trademarks so as to prevent the loss of control over its goodwill and reputation. See eg. Pizza

Hut, Inc. v. White, 2002 U.S. Dist. LEXIS 19930 at *10 (N.D. Tex) (October 18, 2002)

(Lindsay, J.) After all, the protection of the Plaintiff's trademarks, proprietary marks and trade

secrets is perhaps the most significant "business interest" which the Franchise Agreement,

containing the covenant not to compete, was designed to protect. Amerispec, at *13-14.  See

similarity in analysis of factors of substantial likelihood of success, irreparable injury, the

threatened injury outweighs the threatened harm and the injunctive relief will not disserve the

public interest.    Amerispec, at *19-21. Plaintiff has demonstrated that Dickey's System

Trademarks, Proprietary Marks and Trade Secrets have developed goodwill. Amerispec at *13.

Plaintiff is entitled by entering into its covenant not to compete "to protect that goodwill by

preventing a former franchisee who operated under its trademark…from competing against it.

Amerispec at *13.  "Moreover, courts have recognized the legitimate interest of franchisors in

protecting their franchise systems." Amerispec at *14.

BRIEF IN SUPPORT OF PLAINTIFF'S (1) MOTION FOR DEFAULT JUDGMENT ON LIABILITY ISSUES (2) MOTION
FOR ENTRY OF PERMANENT INJUNCTION (3) MOTION FOR CIVIL CONTEMPT AND SANCTIONS AND (4) MOTION
TO CORRECT RECORD PURSUANT TO FRCP 60(a)



Therefore, this court should grant Plaintiff's Motion for Permanent Injunction on the additional basis that Defendants have violated the covenant not to compete

## III.  Motion for Civil Contempt

"A party may be held in contempt if he violates a definite and specific court order requiring him to perform or refrain from performing a particular act or acts with knowledge of that order".  <u>Whitfield v. Pennington</u>, 832 F.2d 909,913 (5th Cir. 1987).  "The civil contempt sanction is coercive rather than punitive and is intended to force a recalcitrant party to comply with a command of the court." <u>Ibid</u>.  "Intent is not an issue in civil contempt proceedings; rather the question is whether the alleged contemnors have complied with the court's order".  <u>Id</u>.  A temporary restraining order or injunctive relief must be framed so that those enjoined will know what conduct the court has prohibited.  <u>Amer. Airlines, Inc. v. Allied Pilots Assoc.</u> 228 F.3d 574,578 (5th Cir. 2000) .  " However, [t]he district court need not anticipate every action to be taken in response to its order, nor spell out in detail the means in which its order must be effectuated." <u>Ibid.</u>

Plaintiff in this "civil contempt proceeding bears the burden of establishing by clear and convincing evidence 1) that a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply with the court's order." <u>Whitcraft v. Brown</u>, 570 F.3d 268,271 (5th Cir. 2009).

First, there can be no dispute that a court order was in effect.  The court issued its Order on March 3, 2010.  The Temporary Restraining Order Bond was filed on March 9, 2010.  The Court signed an Order Extending Temporary Restraining Order on March 17, 2010 which

BRIEF IN SUPPORT OF PLAINTIFF'S (1) MOTION FOR DEFAULT JUDGMENT ON LIABILITY ISSUES  (2) MOTION FOR ENTRY OF PERMANENT INJUNCTION (3) MOTION FOR CIVIL CONTEMPT AND SANCTIONS AND (4) MOTION TO CORRECT RECORD PURSUANT TO FRCP 60(a)

Page 20

extended the temporary restraining order until March 31, 2010. The Affidavit of Lauren Parker clearly describes continuing trademark infringement and other violations of the temporary restraining order based upon an on-site inspection of the terminated franchise location on March 19, 2010, at which time the temporary restraining order was in full force and effect.

Second, the temporary restraining order clearly required certain conduct by the respondents. The temporary restraining order ordered that "Defendants, their attorneys, agents, directors, representatives, and those persons or entities in concert with them are enjoined and restrained" from eight (8) specific categories of prohibited conduct.

Third, the Defendants failed to comply with this Court's temporary restraining order as the Affidavit of Lauren Parker establishes that arguably each of the eight (8) categories of prohibited conduct have been violated.

In summary, subsequent to this Court's entry of its temporary restraining order on March 3, 2010, Defendants have continued to violate the Court's temporary restraining order, the terms of franchise notice of termination and the franchisee's post termination obligations under the Franchise Agreement. As more fully set forth in the Affidavit of Lauren Parker, on March 19, 2010, Plaintiff conducted a second post-termination inspection of the terminated franchise location at 2845 E. Overland Rd., Suite 190, Meridian, Idaho 83642. In summary, the second on-site inspection revealed that the restaurant was still violating the temporary restraining order in the following respects by utilizing:

- o  the Dickey's System proprietary electric exterior sign which had been modified by removing the words "Dickey's";

BRIEF IN SUPPORT OF PLAINTIFF'S (1) MOTION FOR DEFAULT JUDGMENT ON LIABILITY ISSUES (2) MOTION FOR ENTRY OF PERMANENT INJUNCTION (3) MOTION FOR CIVIL CONTEMPT AND SANCTIONS AND (4) MOTION TO CORRECT RECORD PURSUANT TO FRCP 60(a)

Page 21

- the Dickey's System proprietary interior menu boards hanging from the ceiling except the name "Dickey's" had been covered with tape;

- the Dickey's System barbecue food items (7) and side items (15) appearing on   the Dickey's System proprietary interior menu boards;

- debit card printing machines that described debit card transactions as "MP*Dickey's IC-108 MERI03/19M;

- the Dickey's System décor including historic black and white photographs, antique guns, utensils, wall art, longhorns, specialized tables and chairs, etc.;

- Dickey's System secret recipes/trade secrets of staple food items;

- Dickey's System large electric drive thru exterior menu signboards with the Big Yellow Cup and trademarked logo shown 15 times as well as Dickey's System slogan "Slow Cooked, Served Fast".

<u>(Parker Affidavit)</u>

"Defendants had notice of Plaintiff's trademark restrictions and rights, and of Plaintiff's claims in this case, and of the Court's entry of a Temporary Restraining Order, but nevertheless" continued to infringe on Plaintiff's trademark and violate the temporary restraining order even after receiving actual notice thereof.  See <u>Gucci America, Inc. v. Gucci</u>, 2009 U.S. Dist. LEXIS 124888 at *99 (S.D. N.Y.) (August 5, 2009). "Once a violation was demonstrated, the burden then fell upon [Defendants] to show either mitigating circumstances that might cause the district court to withhold the exercise of its contempt, power, or substantial compliance" with the temporary restraining order.  <u>Whitfield</u>, 832 F.2d at 914.  Since Defendants have ignored these legal proceedings despite actual knowledge thereof, this Court is fully justified in enforcing its temporary restraining order by civil contempt.

"Judicial sanctions in civil contempt proceedings, may in a proper case, be employed for either or both of two purposes:  to coerce the defendant into compliance with the court's order,

<u>BRIEF IN SUPPORT OF PLAINTIFF'S  (1) MOTION FOR DEFAULT JUDGMENT ON LIABILITY ISSUES  (2) MOTION FOR ENTRY OF PERMANENT INJUNCTION (3) MOTION FOR CIVIL CONTEMPT AND SANCTIONS AND (4) MOTION TO CORRECT RECORD PURSUANT TO FRCP 60(a)</u>

and to compensate the complainant for losses sustained." American Airlines 228 F.3d at 585. As more fully described above, Plaintiff requires the coercive powers of civil contempt sanctions in this case in order to discover and ascertain the amount and extent of its damages which may only be determined after an accounting of Defendants' financial records and documents. In addition, Plaintiff prays for recovery of its attorneys' fees and costs to compensate Plaintiff for its damages necessitated by Defendants' failure to comply with the Court's Order.

## IV. Motion to Correct Record Pursuant to FRCP 60 (a)

F.R.C.P. 60(a) provides in pertinent part:

> (a)    Correction Based on Clerical Mistakes: Over-sights and Omissions. The court may correct a clerical mistake **or a mistake arising from oversight or omission whenever one is found in** a judgment, order, **or other part of the record.** The court may do so on motion or on its own, with or without notice.

(emphasis added).

Plaintiff in its complaint and prior affidavits inadvertently misidentified the address of the franchise location as 2441 N. Snow Goose Way, Meridian, Idaho 83645 when in fact that is the registered address of Defendant Luigi Mangione as registered agent of Defendant Lira, LLC. The correct address for the terminated franchise location is  2845 E. Overland Rd., Suite 190, Meridian, Idaho, 83642. Defendants have not been prejudiced or surprised by this inadvertent misidentification since (a) Defendants were properly served at the registered address (b) Defendants have admitted to Plaintiff's counsel that they have actual notice of these proceedings (c) Defendants have failed to answer, respond or otherwise appear herein to raise an issue concerning the inadvertent misidentification (d) Defendants are fully aware of the correct

BRIEF IN SUPPORT OF PLAINTIFF'S (1) MOTION FOR DEFAULT JUDGMENT ON LIABILITY ISSUES (2) MOTION FOR ENTRY OF PERMANENT INJUNCTION (3) MOTION FOR CIVIL CONTEMPT AND SANCTIONS AND (4) MOTION TO CORRECT RECORD PURSUANT TO FRCP 60(a)

Page 23

terminated franchise location address since they are the officers, operators and employees of such terminated franchise location.

It is axiomatic that courts have the power and the duty to correct inadvertent errors in the record arising from oversight or omission which may be corrected by the court at any time of its own initiative or on the motion of any party. <u>American Trucking Associations, Inc. v. Frisco Transportation Co.</u>, 358 U.S. 133, 145, 79 S.Ct. 170 180-181 (1958) citing F.R.C.P. 60(a). "A mistake correctable under F.R.C.P. 60(a) need not be committed by the clerk or the court and Rule 60(a) is even available to correct mistakes by the parties," <u>United States v. Kellog (In Re West Texas Marketing Corp.)</u>, 12 F.3d 497,503-504 (5th Cir. 1994); <u>Luper v. A. Beam's Security</u>, (In Re Lee Way Holding Co.) 113 B.R. 406,407-408 (S.D.-Ohio 1990). (Courts have construed the Rule's reference to clerical mistakes as not necessarily confined to those committed by the clerk, noting that relief might be had under the Rule for the clerical mistakes of the court, clerk, jury or party).

In a celebrated recent case involving entertainer M.C. Hammer, a federal district court entered a default judgment against M.C. Hammer under his real legal name Stanley Burrell, whose surname was mis-spelled on the summons and in the complaint and other legal documents as "Berrell". <u>Icho v. Packetswitch.com, Inc.</u> 2010 U.S. Dist. LEXIS 10118 at *1-2 (N.D. Calif.) (Feb. 5, 2010). Several years later, Stanley Burrell a/k/a M.C. Hammer attempted to set aside and vacate the default judgment. <u>Ibid</u>. Burrell claimed that Plaintiffs' administrative motion pursuant to FRCP 60(a) to change the name on the default judgment from "Stanley Berrell" to "Stanley Burrell" was improper. Id. at *15. The Court found Burrell's argument unpersuasive

<u>BRIEF IN SUPPORT OF PLAINTIFF'S (1) MOTION FOR DEFAULT JUDGMENT ON LIABILITY ISSUES (2) MOTION FOR ENTRY OF PERMANENT INJUNCTION (3) MOTION FOR CIVIL CONTEMPT AND SANCTIONS AND (4) MOTION TO CORRECT RECORD PURSUANT TO FRCP 60(a)</u>

and held "Plaintiff's administrative motion to correct the misspelling of Burrell's name on the original judgment corrected a clerical error on a judgment that otherwise was binding on Burrell, and the actual person in default was not misidentified." <u>Id.</u> at *16. The Court further held that the motion to correct the record under FRCP 60(a) did not alter the substantive rights of either party and that FRCP 60(a) "allows courts to modify their judgment in order to insure that the record reflects the actual intention of the court and the parties." <u>Id.</u> at *14-16 ("Rule 60(a) allows a court to correct what is erroneous because the thing spoken, written or recorded is not what the person intended to speak, write or record".

This case at bar involves far less egregious circumstances than the facts in the M.C. Hammer case and does not alter the substantive rights of the parties since (1) relief was requested pre-default judgment (2) the inadvertent misidentification of the franchise location was brought to the Court's attention by Plaintiff itself (3) Defendants were properly served, have actual notice of these proceedings and failed to answer, respond or otherwise appear to raise the issue or any possible prejudice and (4) the inadvertent misidentification does not involve the name or address for service of any Defendant on the Summons, the Complaint or Officer's Returns, but rather involves a tangential fact contained within the body of the Complaint of which there can be no dispute, prejudice or confusion.

BRIEF IN SUPPORT OF PLAINTIFF'S (1) MOTION FOR DEFAULT JUDGMENT ON LIABILITY ISSUES (2) MOTION FOR ENTRY OF PERMANENT INJUNCTION (3) MOTION FOR CIVIL CONTEMPT AND SANCTIONS AND (4) MOTION TO CORRECT RECORD PURSUANT TO FRCP 60(a)

Page 25

Respectfully submitted,

WESNER COKE & CLYMER, P.C.

By: _Stephen A. Coke_

Stephen A. Coke
Texas State Bar No. 04519000
Richard W. Winn
Texas State Bar No. 21779700
Three Galleria Tower - Suite 800
13155 Noel Road
Dallas, Texas  75240
Telephone: (972) 770-2600
Fax: (972) 770-2601
E-Mail: scoke@wccpc.com
ATTORNEYS FOR PLAINTIFF
DICKEY'S BARBECUE RESTAURANTS, INC.

BRIEF IN SUPPORT OF PLAINTIFF'S  (1) MOTION FOR DEFAULT JUDGMENT ON LIABILITY ISSUES  (2) MOTION
FOR ENTRY OF PERMANENT INJUNCTION (3) MOTION FOR CIVIL CONTEMPT AND SANCTIONS AND (4) MOTION
TO CORRECT RECORD PURSUANT TO FRCP 60(a)

Page 26